Filed 6/18/15  In re D.W. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.W., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D066910 |
| Plaintiff and Respondent, | (Super. Ct. No. SJ011285) |
| v. | |
| MICHAEL S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee Lagotta, Judge.  Reversed.

Clare M. Lemon, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

When a child is removed from parental custody in a dependency case, a presumed father is ordinarily entitled to receive reunification services to facilitate the child's return. (Welf. & Inst. Code, § 361.5.)[1] If reunification does not occur within a specified time, the juvenile court will terminate reunification services and set a selection and implementation hearing under section 366.26. (*In re Marilyn H*. (1993) 5 Cal.4th 295, 308 (*Marilyn H*.).) Once this happens, a presumed father seeking reunification services *ordinarily* must do so by way of a section 388 petition in which he bears the burden of establishing changed circumstances and that modification is in the child's best interests. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 447 (*Zacharia D.*).) The unique facts of this case fall outside the ordinary rule.

Michael S. appeals the juvenile court's order denying his request for reunification services with minor D.W. The juvenile court initially ordered reunification services be provided to D.W.'s mother, Amber C., but did not order any be provided to Michael because he was an alleged, but not presumed, father. Michael repeatedly requested that the court elevate his fatherhood status, but the court deferred his requests. The court later terminated Amber's reunification services and set a section 366.26 hearing, but then granted Amber's section 388 petition seeking to vacate the section 366.26 hearing and reinstate her reunification services. The court then elevated Michael to presumed father status. However, despite Michael's presumed father status, and despite the fact that no section 366.26 hearing was then pending, the juvenile court ruled Michael's request for

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

reunification services was governed by section 388 (and its changed-circumstances and best-interests requirements) and denied his request. Under the circumstances, we conclude this was error and reverse the order denying Michael's request for reunification services.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 4, 2013, police arrested Amber on a felony warrant and for possession of a controlled substance, and Michael for violating a restraining order prohibiting contact with Amber. Police took into protective custody two of Amber's children: then-four-year-old D.W., and his then-one-year-old half brother Michael S., Jr.[2] On July 8, the San Diego County Health and Human Services Agency (Agency) filed petitions under section 300, subdivisions (b) and (g) on behalf of D.W. and Michael Jr.[3]

Amber identified Albert W. as D.W.'s father, and Michael as Michael Jr.'s. Albert denied being D.W.'s father and informed social workers of an upcoming hearing to determine D.W.'s paternity in a child support case Amber filed against Albert. Albert did not want to speak any further with social workers until his paternity was confirmed with a DNA test.

At the July 9 detention hearing, the juvenile court found a prima facie showing was made on the petition and detained D.W. in out-of-home care. At a continued detention hearing the next day, Michael requested to be designated as D.W.'s and

---

[2] We will refer to appellant as Michael and to Michael S., Jr., as "Michael Jr."

[3] Michael Jr. is not a party to this appeal. We mention him only as relevant to Michael's appeal.

3

Michael Jr.'s presumed father under Family Code section 7611, subdivision (d).[4] The court confirmed the prima facie finding on the petition, found Michael to be Michael Jr.'s presumed father, and deferred the issue of D.W.'s paternity because Albert's test results were still pending.

The Agency's jurisdiction and disposition report indicated D.W. and Michael Jr. were detained with a relative and recommended they remain in out-of-home care. Paternity testing was never completed in Albert's child support case because Amber did not take D.W. to be tested. Amber did not make any contact with the Agency and was rearrested on July 19. Michael admitted to previous drug use but stated he had been clean for three to four months. He remained incarcerated and planned on being released to a drug treatment program.

At the jurisdiction and disposition hearing, Michael renewed his request for presumed status as to D.W., asserting he had filled out a paternity questionnaire, had raised D.W. since he was an infant, and that Albert had no relationship with D.W. D.W.'s counsel informed the court she had spoken to D.W., who confirmed he viewed Michael as his father. The court added Michael to D.W.'s petition as an alleged father, and deferred further paternity findings until the next hearing, when results of Albert's paternity testing were expected to be available.

At an August 22 settlement conference, Amber and Michael submitted to jurisdiction on the section 300, subdivision (b) count, and the court dismissed (at the

___

[4] Family Code section 7611 provides: "A person is presumed to be the natural parent of a child if . . . [¶] The presumed parent receives the child into his or her home and openly holds out the child as his or her natural child." (*Id.*, subd. (d).)

Agency's request) the subdivision (g) count. The court ordered that the boys remain placed with a relative, that Amber receive reunification services as to both D.W. and Michael Jr., and that Michael receive reunification services only as to Michael Jr. Michael renewed his request for presumed status as to D.W. However, because paternity test results still were not available, the court deferred the issue and set a special hearing on paternity for September 30. The Agency's counsel informed the court that if it turned out that Albert was not D.W.'s biological father, the Agency would not object to Michael's request for presumed status and would provide Michael reunification services as to D.W.

At the September 30 special hearing, paternity test results confirmed Albert was D.W.'s biological father. However, Albert did not appear at the hearing. The court appointed counsel for Albert and continued the hearing so he could appear and so the Agency could address whether to provide services to him or to recommend placing D.W. with him. Michael advised the court he was still seeking presumed status.

At the continued special hearing on October 21, Albert's counsel and the Agency reported being unable to reach him. The juvenile court amended the petition to reflect Albert was D.W.'s biological father. However, the court found Albert was not showing an interest in reunifying with D.W. and, accordingly, denied Albert reunification services. The court advised Albert's counsel that if he became interested in receiving services in the future, he could request them by way of a section 388 petition. The attorney who specially appeared on behalf of Michael's regular attorney informed the court Michael had not had any contact with her office. The court confirmed Michael would remain

5

identified as D.W.'s alleged father. The court set a six-month review hearing for February 18, 2014.

The Agency's report for the six-month review hearing recommended terminating reunification services and setting a section 366.26 hearing to determine a permanent plan for D.W. Amber was not making progress in services, had been in and out of jail, and was currently incarcerated with a criminal court date pending. Michael had left a drug treatment program and was incarcerated for four weeks in October 2013, but was currently submitting clean drug tests to the probation department and living at the St. Vincent de Paul treatment program. Both parents set the matter for trial.

In an addendum report dated March 7, 2014, the Agency changed its recommendation to offer Amber continued reunification services as to D.W. and Michael Jr., and to offer Michael continued reunification services as to Michael Jr. only. Both parents submitted on the Agency's report. However, the children's counsel disagreed with the Agency's changed recommendation, so the court set the matter for trial.

The juvenile court conducted the contested six-month review hearing on March 28, 2014. After receiving evidence, the court terminated Amber's reunification services as to both boys, but continued to extend reunification services to Michael as to Michael Jr. The court set a section 366.26 hearing as to D.W. and set a 12-month review hearing as to Michael Jr.

The Agency's report for the section 366.26 hearing as to D.W. recommended terminating parental rights and ordering a permanent plan of adoption. The report

6

asserted that D.W. stated he did not wish to visit with either of his parents. Amber set the matter for trial.

On August 7, 2014, Amber filed a petition under section 388 requesting that the juvenile court vacate the section 366.26 hearing and reinstate reunification services. Amber cited as changed circumstances her completion of a drug treatment program and parenting course, and participation in a perinatal case management program.

On August 20, 2014, Michael filed a petition under section 388 requesting that the court elevate him to presumed father status, vacate the section 366.26 hearing, and order reunification services as to D.W. Michael cited as changed circumstances his participation in a drug treatment program, residence at a sober living program, and visitation with D.W. and Michael Jr.

During an August 20, 2014, settlement conference, the juvenile court made a prima facie finding on each parent's section 388 petition and set them for contested hearings. The Agency informed the court it intended to submit on Amber's petition because the Agency believed the court erroneously terminated Amber's reunification services at the six-month review hearing. The Agency believed the court should not have terminated reunification services at that stage absent a request by the Agency under section 388.

At an October 7, 2014, settlement conference, the Agency's and the children's counsel submitted on Amber's section 388 petition, agreeing she should receive reunification services until the 18-month date. The court granted Amber's petition, vacated the section 366.26 hearing, and ordered that she receive reunification services

7

until the 18-month date. The court specified its ruling was limited to Amber and confirmed Michael's section 388 petition was set for trial on October 10.

On October 10, the Agency filed an addendum report opposing Michael's section 388 petition and request for reunification services. The Agency reported receiving a referral a month earlier in which D.W. stated he was afraid of Michael because Michael "slammed him up against the wall and would not release him until he stopped crying," and "touched his penis more than once and it made him feel uncomfortable."

At the outset of the October 10 contested hearing, the juvenile court and counsel addressed the appropriate procedural vehicle for addressing Michael's requests that his paternity status be elevated and that he be provided reunification services as to D.W. Michael's counsel argued neither request needed to proceed via a section 388 petition. The court allowed Michael to withdraw his section 388 petition as to elevating paternity and heard the matter as a contested hearing. The court required Michael to proceed under section 388 on his request for services.

The juvenile court heard testimony from Michael, Amber, and the social worker assigned to D.W.'s case. The court also admitted in evidence certain of the Agency's reports and addenda, and Michael's parentage inquiry form. At the conclusion of the hearing, the court found Michael had met his burden of establishing himself as D.W.'s presumed father under Family Code section 7611, subdivision (d). Regarding reunification services, however, the court found Michael did not meet his burden under section 388 of showing either changed circumstances or that ordering reunification services would be in D.W.'s best interests.

8

Michael timely appealed.

DISCUSSION

Michael contends the juvenile court erred by requiring him to request reunification services via a section 388 petition, which required him to show changed circumstances and that doing so was in D.W.'s best interests.  (§ 388; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)  He asserts that because the court confirmed his presumed father status when the case was still in a reunification posture—because the court had already granted Amber's section 388 petition seeking to vacate the section 366.26 hearing and restore her services—he was automatically entitled to receive reunification services under section 361.5 without satisfying section 388's criteria.  Under the unique circumstances presented here, we agree.

A.    *Legal Framework*

"As a general rule, when a child is removed from parental custody under the dependency statutes, the juvenile court is required to provide reunification services pursuant to section 361.5 to 'the child and the child's mother and statutorily presumed father.' "[5]  (*In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1281, quoting § 361.5, subd.

---

[5]    "In dependency proceedings, fathers are divided into four categories:  de facto fathers, alleged fathers, natural fathers and presumed fathers.  A man, such as a stepfather, who has assumed the role of parent, is a 'de facto father.'  A man who may be the father of the dependent child but has not been established to be the natural or presumed father is an 'alleged father.'  A man who has been established to be the biological father is a 'natural father.'  A man who has held the child out as his own and received the child into his home is a 'presumed father.'  A 'natural father' can be, but is not necessarily, a 'presumed father' and a 'presumed father' can be, but is not necessarily, a 'natural father.' "  (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801, fns. omitted.)  "Presumed father status ranks highest."  (*Ibid.*)  "Presumed fatherhood, for purposes of

9

(a).)  "The purpose of these reunification services is 'to facilitate the return of a dependent child to parental custody.' "  (*Ibid*.)  "Unless an express exemption exists, reunification services provided pursuant to section 361.5 are mandatory, subject to strict timelines, and monitored through periodic court reviews at which parents are admonished that failure to participate successfully in reunification efforts could lead to the termination of their parental rights.  (§§ 361.5, 366.21, 366.22.)"  (*Ibid*.)

" 'If the child may not safely be returned to the parents within a maximum of 18 months from removal,' the court must terminate reunification efforts and set a section 366.26 selection and implementation hearing.' "  (*Zacharia D.*, *supra*, 6 Cal.4th at p. 447.)  "Prior to terminating reunification services, the court must make a determination that it would be detrimental to the child to be returned to the parent's custody."  (*Marilyn H.*, *supra*, 5 Cal.4th at p. 308.)  "[U]p until the time the section 366.26 hearing is set, the parent's interest in reunification is given precedence over a child's need for stability and permanency."  (*Id.* at p. 310.)  "Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability."  (*Id*. at p. 309.)  "The burden thereafter is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue."  (*Ibid*.)

We review de novo the juvenile court's determination that Michael's request for reunification services was governed by section 388 instead of section 361.5.  (*Jose O. v.*

---

dependency proceedings, denotes one who 'promptly comes forward and demonstrates a full commitment to his paternal responsibilities—emotional, financial, and otherwise[.]' "  (*Id.* at pp. 801-802.)  "Presumed father status entitles the father to . . . a reunification plan."  (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1209 (*T.R.*).)

10

*Superior Court* (2008) 169 Cal.App.4th 703, 706 ["Questions of law that do not involve resolution of disputed facts are subject to de novo review, giving no deference to the superior court's ruling."].)

B.    *Analysis*

Michael attained presumed father status while D.W.'s dependency was in a reunification posture and no section 366.26 hearing was pending.  Therefore, he was presumptively entitled to receive reunification services.  (§ 361.5; *T.R.*, *supra*, 132 Cal.App.4th at p. 1209.)  The Agency argues, however, that because the juvenile court had at one time set a section 366.26 hearing, Michael could only establish his entitlement to reunification services by prevailing on a section 388 petition.  We are not persuaded.

The Agency asserts D.W.'s dependency case was only restored to a *limited* reunification posture because the juvenile court granted *Amber's* section 388 petition. The Agency argues that under *In re Katelynn Y.* (2012) 209 Cal.App.4th 871, Michael is not entitled to the benefit of the court's ruling on that petition because "the court does not consider the parents as one unit, but instead treats each of them on his or her own merits." (*Id.* at p. 877.)  We find this principle inapplicable.  Amber had to proceed by way of a section 388 petition because the juvenile court had previously entered an order terminating her reunification services and setting a section 366.26 hearing.[6]  This previous order was based on the juvenile court's evaluation of Amber's "own merits." (*In re Katelynn Y.*, at p. 877.)  By contrast, the court had never considered Michael's "own

---

6      It is somewhat disingenuous for the Agency to assert this previous order as the basis for requiring Michael to proceed by way of section 388 petition when the Agency argued below that the juvenile court erred by entering it.

11

merits" because it had not yet addressed his request for presumed father status or ever ordered that he receive (or not receive) reunification services as to D.W. (*Ibid.*)

The Agency also relies on *Zacharia D.* for the proposition that "if a man fails to achieve presumed father status prior to the expiration of any reunification period in a dependency case . . . , he is not entitled to such services under section 361.5," but rather, "[h]is only remedy . . . [is] to file a motion to modify under section 388." (*Zacharia D.*, *supra*, 6 Cal.4th at p. 453.) *Zacharia D.* is distinguishable. There, a biological father had reason to believe at the outset of the dependency case that he was the child's father, but he waited until the 18-month review hearing before first requesting paternity testing. (*Id.* at p. 441.) The juvenile court terminated the mother's reunification services and set a section 366.26 hearing before ruling on the father's paternity status. (*Ibid.*) The court later found the father to be the child's biological and presumed father, but declined to extend additional reunification services because "the County had no obligation to offer [father] reunification services until the court declared him a parent, which had not occurred until June 7 *because of [father]'s 'own doing.'* " (*Id.* at pp. 443, 441-442, italics added.) Under those circumstances, the Supreme Court was understandably concerned with a biological father "impeding a child's permanent and timely placement" due to the father's "decision to wait until the 18-month hearing to assert his paternity claim." (*Id.* at p. 452.)

We are not confronted with that concern. First, it does not appear that providing Michael with reunification services would have impeded D.W.'s permanent placement—the Agency submitted on Amber's request seeking to vacate the section 366.26 hearing

and provide her additional reunification services.[7]  Second, the juvenile court's delay in confirming Michael's presumed father status was not of his " 'own doing.' " (*Zacharia D., supra,* 6 Cal.4th at p. 443.)  To the contrary, unlike the father in *Zacharia D*., Michael repeatedly asserted presumed father status at the outset of the dependency.  Although, as the Agency points out, a year elapsed without Michael pressing the court to rule on his request, we do not find this fact sufficient to bring this case within the holding of *Zacharia D*.

Therefore, based on the unique facts of this case—including, but not limited to, Michael's early and repeated assertion of presumed father status, the trial court's repeated deferral of the issue, and the questionable propriety with which the court terminated (but later restored) Amber's reunification services and set a section 366.26 hearing—we conclude Michael was entitled to receive reunification service as to D.W. without first prevailing on a section 388 petition.  It was legal error for the juvenile court to find otherwise.

---

[7]     The Agency requests that we take judicial notice of a March 9, 2015, minute order in which the juvenile court continued the 18-month review hearing to April 20, 2015, "in order to transition [D.W.] back into the mother's care."  The Agency asserts the minute order suggests D.W. will reunify with Amber "in the next few weeks," thereby rendering Michael's appeal moot.  Michael opposes the request and disagrees with the Agency's "liberal and conjectural interpretation" of the minute order.  We deny the Agency's request for judicial notice.  Even if we were to consider the minute order in the manner the Agency suggests, we would not conclude it renders Michael's appeal moot—D.W.'s reunification *with Amber* does not address the merits of *Michael's* request for services in an ongoing dependency.  The Agency's interpretation would also underscore the point that granting reunification services to Michael would not have impeded D.W.'s permanent placement via a section 366.26 hearing.

The Agency argues that even if the juvenile court erred, the error was not prejudicial because Michael received reunification services in Michael Jr.'s dependency case. Michael counters that he needs different services (such as conjoint therapy) for D.W. because D.W. is older than Michael Jr. and because a rift appears to have developed between Michael and D.W. during the dependency. We agree with Michael. It does not appear to us that the reunification services he received in Michael Jr.'s case were sufficiently tailored to the different circumstances of Michael's relationship with D.W. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972 ["Reunification services need not be perfect. [Citation.] But they should be tailored to the specific needs of the particular family."].) Accordingly, the error was prejudicial.

DISPOSITION

The order is reversed.

McCONNELL, P. J.

WE CONCUR:


NARES, J.


HALLER, J.

14