Filed 10/30/20  In re K.C. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re K.C., a Person Coming Under the Juvenile Court Law. | |
| | D077406 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. NJ14597) |
| Plaintiff and Respondent, | |
| v. | |
| PATRICIA C., | |
| Defendant and Appellant. | |

APPEAL from order of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Senior Deputy County Counsel, for Plaintiff and Respondent.

Patricia C. (Mother) appeals from the juvenile court order terminating her parental rights to her daughter, K.C., under Welfare and Institutions Code section 366.26, following two dependency proceedings that first commenced over eight years ago.[1]  The order also terminated the parental rights of Jason C., who remained an alleged father throughout the cases and is not a party to this appeal.  The court had previously determined the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) did not apply. Mother's sole contention on appeal is that the ICWA ruling was in error, because Jason should have been treated as a biological or presumed father and the Agency failed to satisfy ICWA requirements as to him.  The Agency contests Mother's ability to bring this appeal on multiple grounds, including standing and forfeiture, and maintains any error as to ICWA was harmless. We deny the Agency's request to dismiss the appeal, but agree Mother does not establish reversible error and affirm.

PROCEDURAL AND FACTUAL BACKGROUND

K.C. was born in April 2008.  Her first dependency proceeding commenced in March 2012, and closed in August 2013.  In August 2015, the Agency filed the petition for the current dependency case based on a number of issues, including Mother's drug use and a history of parental neglect. Jason was listed as the alleged father, with contact information in Texas. The ICWA-10 form (Indian Child Inquiry Attachment) indicated an inquiry was made and K.C. had no known Indian ancestry.

The detention report stated the social worker had not been able to reach Jason yet, and discussed his role in the prior dependency case.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

According to the report, he "was there for [K.C.'s] birth and participated in her life for the first six months," but he was "unable to take custody . . . or to provide a home" and was "not interested in reunification services or visitations . . . ." A later report confirmed he declined reunification services. Jason also stated in April 2012 "that it has not been proven that he is the father of [K.C.]." On August 23, 2012, the juvenile court found he was an alleged father. The same day, the court found ICWA did not apply.

At the detention hearing in this case in August 2015, the juvenile court asked Mother's counsel, "[T]o the best of the mother's knowledge, would the alleged father, Mr. [C.], claim any Native American Indian heritage?" Her counsel replied, "The mother doesn't believe so." The court found "the provisions of [ICWA] do not apply on these facts, which would be consistent with the same finding made in the original dependency on August 23rd of 2012." The court deferred the issue of paternity.

Mother filed a parentage inquiry questionnaire naming Jason as the father. She indicated the court in Vista (where the dependency case was being heard) had entered a judgment of paternity, but she did not remember the date and there had not been genetic testing.[2] She further indicated they were married in June 2007 and divorced in 2009, and were married and living together when K.C. was conceived and born. She also reported Jason was at the hospital when K.C. was born, signed a declaration stating he was the father, and tattooed her name on him, but did not provide child support. She left the question about his Native American heritage blank.

---

[2]    Mother contends here that there "was . . . a judgment of paternity" and the "juvenile court was aware of a judgment of paternity," but in both instances, she cites her own questionnaire.

Mother also filed an ICWA-020 form (Parental Notification of Indian Status) indicating she had no known Native American ancestry.

The jurisdiction/disposition report further addressed ICWA, and stated "reasonable inquiry was completed" in September 2015. Mother denied she had Native American heritage or that K.C. was eligible to enroll in a tribe. She said Jason "had mentioned to her that he has 'some sort of Indian,'" but "she does not believe it has been 'proven.'" The Agency stated it would continue trying to contact Jason and to "obtain information, including . . . pertaining to ICWA," and would "provide . . . all pertinent information at the next hearing." The report addressed other matters regarding Jason as well. Mother reported the last time he saw K.C. was when she was three years old. The report also stated K.C.'s birth certificate named Jason and was signed by him. The certificate was attached to the report; it did name him, but did not have his signature.

The juvenile court's order for the jurisdiction hearing found, "No individual has come forward to request presumed or biological father status of the child." It reiterated this finding in its orders for a six-month review in April 2016 and a 12-month review in November 2016. The court also found, "Notice pursuant to the Indian Child Welfare Act is not required because the Court knows the child is not an Indian child. Reasonable inquiry has been made to determine whether or not the child is or may be an Indian child." It likewise reiterated this finding in later orders.

The case proceeded, and Jason had not yet come forward. The reports contained limited additional information regarding him. For example, a description of an August 2017 visit reflected K.C. asked Mother, "Why don't I have a dad? Where is he?," and Mother responded in part, "He wasn't ready to be a dad. He is living a different life in Texas." In another visit description from June 2019, Mother reiterated he "wasn't ready to be a dad."

4

In May 2019, the juvenile court set a section 366.26 hearing.[3] The Agency was subsequently able to speak with Jason, which it discussed in the section 366.26 report and an addendum report, both filed in September 2019. Jason contacted a social worker in July 2019 after receiving the section 366.26 notice, and talked to a social worker again later that month. He asked to be present for a Child and Family Team meeting in mid-August 2019, but did not answer when called. In late August, he told a social worker "he needed to think about whether he would like an attorney appointed and if he would like to pursue contact with [K.C.]."

K.C. was placed in her current prospective adoptive home in December 2019. Jason continued to decline participation in the case. A December 2019 addendum report reflected that earlier in the fall, Jason asked the social worker about child support, she reminded him that he could request counsel, and he said he would call her if he would like one. The report also stated that in November 2019, the social worker had notified Jason of K.C.'s planned move to an adoptive home, he asked if it would be permanent, and when she explained the process and asked if he had questions, he said "No" and hung up. A January 2020 addendum report indicated a social worker spoke with Jason about travel plans for K.C. and again asked if he had questions or wanted an attorney, and he again said no. The report also found K.C. had been in over a dozen placements, and Jason "never came forward . . . ."

---

[3]   Mother filed a notice of intent to file a writ petition from the order setting the section 366.26 hearing. Her counsel sent a letter stating she researched potential issues and was unable to file a petition, and we dismissed the matter. On our own motion, we take judicial notice of our June 19, 2019 dismissal order. (Evid. Code §§ 452, 459.)

At the section 366.26 hearing in March 2020, the juvenile court terminated Mother's parental rights. The court also found Jason was K.C.'s father, and terminated his parental rights as well. Jason was not represented by counsel, and was not present. Mother timely appealed.

DISCUSSION

I.     *Overview of Applicable Law*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).)

Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" in dependency proceedings whether a child "is or may be an Indian child." (§ 224.2, subd. (a), Cal. Rules of Court, rule 5.481, subd. (a); see also 25 C.F.R § 23.107 [inquiry is to be made of each participant at the commencement of the proceedings].) If the court or social worker has reason to believe that an Indian child is involved, the social worker must, as soon as practicable, conduct further inquiry, including, but not limited to, interviewing parents and extended family members. (§ 224.2, subd. (e)(1).) If the court or social worker has reason to know the child is an Indian child, notice must be provided to the tribes consistent with statutory requirements. (§ 224.3(a)-(b); see generally *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048-1050 (*D.S.*).)

Also pertinent here is California law governing paternal status. Three types of fathers are recognized in dependency proceedings: presumed, alleged, and biological. (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1209 (*T.R.*).) "An alleged father is a man who may be the father of the child but who has not established biological paternity or presumed father status. [Citation.] A biological father is one whose paternity of the child has been established, but

6

who has not established that he qualifies as the child's presumed father. [Citation.] A presumed father is one who meets one or more specified criteria listed in section 7611 . . . ." (*Ibid.* [" 'The statutory purpose [of section 7611] is to distinguish between those fathers who have entered into some familial relationship with the mother and child and those who have not.' "].)

ICWA defines a "parent" as " 'any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child,' and excludes from the definition . . . an 'unwed father where paternity has not been acknowledged or established.' (25 U.S.C. § 1903(9).)" (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 707-708 (*Daniel M.*).) Courts have found ICWA inapplicable to alleged fathers. (See, e.g., *Daniel M.* at p. 707 [alleged father lacked standing for appeal based on ICWA].)

II.    *Analysis*

    A.    *Standing and Forfeiture as to Jason's Status*

Mother contends Jason "should have been treated as a biological and presumed father to [K.C.] thereby necessitating the inquiry into his Indian ancestry which was never made." The Agency argues she cannot contest Jason's status in this appeal. We agree. As we shall explain, even if she had standing to do so, she has forfeited the issue.

"In juvenile dependency proceedings, as in civil actions generally [citation], only a party aggrieved by the judgment has standing to appeal." (*In re Lauren P.* (1996) 44 Cal.App.4th 763, 768; see *In re K.C.* (2011) 52 Cal.4th 231, 235 (*K.C.*) [recognizing standing is construed liberally, but also "appl[ies] with full force to appeals from dependency proceedings"].)

Mother contends she has standing to raise an ICWA violation on appeal. But the Agency does not dispute this. What it does dispute is

7

whether she has standing to argue the juvenile court erred by failing to treat Jason as a biological or presumed parent.

This argument has some force. "A father's status is significant in dependency cases because it determines the extent to which *the father* may participate in the proceedings and the rights to which he is entitled." (*T.R.*, *supra*, 132 Cal.App.4th at p. 1209, emphasis added.) A parent may still have standing to raise an issue that "advances the parent's argument against terminating parental rights." (*K.C.*, *supra*, 52 Cal.4th at p. 238; see, e.g., *In re Isaiah S.* (2016) 5 Cal.App.5th 428, 437 [mother lacked standing to assert error as to relative placement preference, where, inter alia, there was no indication relatives would pursue option besides adoption].) Mother does not contend Jason's status directly impacts her parental rights. Rather, she raises the issue to bolster her ICWA claim. We question whether this is sufficient, without more—particularly as this court has concluded an alleged father himself lacks standing to raise ICWA error. (See *Daniel M.*, *supra*, 110 Cal.App.4th at pp. 707-709 [dismissing alleged father's appeal from termination of parental rights based on ICWA error, because he lacked standing to raise the issue]; cf. *In re Jenelle C.* (1987) 197 Cal.App.3d 813, 817-818 [mother lacked standing to appeal termination order based on lack of proper notification to alleged father].)

In any event, assuming Mother had standing to contest Jason's status, she forfeited the issue. "A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as "waiver," applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.)

First, there is nothing in the record to suggest Mother or anyone else ever raised an issue as to Jason's status prior to this appeal. The present case commenced in 2015, and Mother could have sought a paternity determination or a finding that Jason was K.C.'s presumed father at any point—including after the multiple occasions when the juvenile court found no one had requested biological or presumed status. She did not do so. It does not appear Mother made any informal efforts to involve Jason in K.C.'s life, either. Rather, she told K.C. he was living a "different life" and "wasn't ready to be a dad." For his part, Jason had not been part of K.C.'s life since she was six months old, lived out of state, and declined to pursue visitation or contact.

Second, although we have discretion to address issues newly raised on appeal when they involve undisputed facts (*In re P.C.* (2006) 137 Cal.App.4th 279, 287-288), the facts are not undisputed. Mother cites the birth certificate, but it only bears Jason's name and not his signature. She also relies on her representations in the parentage questionnaire, but they are vague in certain respects and she identifies no supporting documentation in the record. Meanwhile, Jason questioned paternity in the first dependency proceeding, and it does not appear genetic testing was ever ordered.

Mother's arguments are not persuasive. As an initial matter, she argues she did not forfeit her ICWA claim. We agree, and note the Agency acknowledges ICWA claims generally are not forfeited by failure to object below.[4] But that does not resolve the issue of whether she forfeited her

---

[4] We reject the Agency's argument that Mother nonetheless waived her ICWA claim here. (See, e.g., *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267-1268 (*Samuel P.*) [failure to raise ICWA generally does not constitute waiver], cited in *Isaiah W.*, *supra*, 1 Cal.5th at p. 9.)

ability to contest Jason's status in asserting ICWA error. To that end, Mother suggests in a conclusory manner that she cannot have forfeited the issue, given its connection to her ICWA claim. Otherwise, she just presents her arguments for elevated status; namely, that the juvenile court was required to determine paternity for K.C., evidence supports biological parentage, and Jason qualifies as a presumed father under multiple Family Code sections. We are not persuaded. These are certainly arguments Mother could have presented to the juvenile court, and at a time when Jason could have received notice and opportunity to respond—but that does not establish she can raise them now.

In sum, Mother cannot base her assertion of ICWA error on the belated claim that Jason should have been treated as a biological or presumed father.

B. *ICWA and Harmless Error*

Turning to the juvenile court's determination that ICWA did not apply, we conclude any error was harmless. "Deficiencies in ICWA inquiry and notice may be deemed harmless error when, even if proper notice had been given, the child would not have been found to be an Indian child." (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 653 (*Breanna S.*).) [explaining harmless error analysis under ICWA].)[5]

The Agency acknowledges there is an initial duty of inquiry and the lack of verification this inquiry occurred as to Jason was "problematic," but

---

[5]    We recognize courts have focused on the differences between federal and state ICWA requirements in applying harmless error (*Breanna S.*, *supra*, 8 Cal.App.5th at p. 653), and that there were new federal ICWA regulations in 2016 and conforming amendments to California law in 2019. (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1051.) These distinctions do not impact our analysis here, which turns primarily on ICWA's inapplicability to Jason as an alleged father.

maintains any error was harmless.  We agree in both respects.  The Agency should err on the side of " 'examining thoroughly' " whether the minor is an Indian child (*Isaiah W.*, *supra*, 1 Cal.5th at p. 15), and there is no indication it completed its inquiry as to Jason after making contact with him.  However, Jason remained an alleged father throughout K.C.'s dependency cases, and although there was evidence for paternity, it was never determined.  Thus, it was not established he was a parent under ICWA, and any lack of inquiry was ultimately harmless.  (See *Daniel M.*, *supra*, 110 Cal.App.4th at p. 707; cf. *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 [no error in failing to provide notice to tribes identified by alleged father, where he was excluded as biological father by paternity testing].)

Moreover, Mother told the social worker she did not believe K.C. was eligible to enroll in a tribe, and her counsel told the juvenile court at the detention hearing she did not believe Jason had Indian heritage.  Although Mother later reported to the social worker that Jason mentioned he had " 'some sort of Indian,' " this was speculative at best and she qualified it by saying she did "not believe it ha[d] been 'proven.' "  (Cf., e.g., *In re O.K.* (2003) 106 Cal.App.4th 152, 157, 130 [statement that child " 'may have Indian in him,' " without more, insufficient to invoke ICWA notice]; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1469 [ICWA properly found inapplicable where heritage claim was "too speculative" and based on " 'family lore' "].)

Mother's arguments are unavailing.  First, she contends this matter is similar to *In re J.O.* (2009) 178 Cal.App.4th 139, abrogated on other grounds by *In re R.T.* (2017) 3 Cal.5th 622, explaining the appellate court there found the father should have been found to be a presumed father and remanded for ICWA inquiry.  Even assuming *J.O.*'s reasoning were sound, the case is distinguishable because the appellant was the father and had properly raised

11

his paternal status issue in the juvenile court. (*J.O.*, at pp. 143, 146; compare this court's decision in *In re C.A.* (2018) 24 Cal.App.5th 511, 521 [ICWA's notice provision did not apply to presumed father with no biological or adoptive relationship to child].)[6]

Second, she argues "parents do not have the burden of proving the child's status," the Agency and juvenile court "were required . . . to inquire of the family's potential Indian heritage," and "[s]uch error cannot be harmless." There is no question the Agency (and, by extension, the juvenile court) have an inquiry obligation, but Mother does not explain why that would preclude the existence of harmless error. The cases she cites do not address harmless error, and are distinguishable. (See *In re Damian C.* (2009) 178 Cal.App.4th 192, 199 [conflicting evidence as to mother's ancestry that implicated specific tribes was sufficient for ICWA notice]; *Samuel P.*, *supra*, 99 Cal.App.4th at p. 1266 [rejecting agency's argument that there was no evidence mother was

---

[6] To the extent Mother is suggesting the juvenile court should have considered evidence as to Jason's paternal status in making its ICWA finding, regardless of whether anyone raised an issue regarding it, we disagree. The court would have had no reason to consider such evidence, because Jason was only an alleged father and ICWA does not apply to them. (See *Daniel M.*, *supra*, 110 Cal.App.4th at pp. 707-709.)

tribe member, where there was other "solid information regarding direct tribal lineage"].)[7]

Finally, Mother contends that "any speculation" as to Jason's heritage "would be contrary to the purpose of the ICWA and . . . improper," citing *In re J.N.* (2006) 138 Cal.App.4th 450, 461. This argument assumes Jason is a father for purposes of ICWA, but this was not established, as discussed *ante*. *J.N.* is also distinguishable, because it involved a lack of inquiry as to the mother, not an alleged father. (*Id.* at p. 461 [juvenile court declined to find lack of inquiry as to mother was harmless error].)

We recognize the importance of ensuring compliance with ICWA's requirements. But Mother has not established prejudicial error in this regard. Under the circumstances, even a conditional remand for ICWA inquiry as to Jason would only serve to further delay permanency and stability for K.C., who has already been part of the dependency system for over eight years.

We affirm the order terminating Mother's parental rights, and deny the Agency's request to dismiss the appeal.

_____

[7] As for *In re Andrew S.* (2016) 2 Cal.App.5th 536, another case cited by Mother here, this court also expressed doubts about its analysis. (*Id.* at pp. 540, 546-548 [father told social worker he "might have Indian ancestry on his father's side," initially raised ICWA claim on appeal, and then withdrew it; Court of Appeal accepted withdrawal, but remanded for "adequate investigation" and emphasized duties of court and agency]; see *In re J.L.* (2017) 10 Cal.App.5th 913, 925 [*Andrew S.* did not explain reasoning for suggesting father's "equivocal and vague" statement was sufficient for further inquiry, nor address pertinent authorities].)

DISPOSITION

The order is affirmed.

_____

HUFFMAN, Acting P. J.

WE CONCUR:

_____

O'ROURKE, J.

_____

DATO, J.

14