34 Cal.Rptr.3d 215 (2005)
132 Cal.App.4th 1202
In re T.R., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Marvin P., Defendant and Appellant.
No. D045894.
Court of Appeal, Fourth District, Division One.
August 30, 2005.
*217 Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.
Jacquelyn E. Gentry, under appointment by the Court of Appeal, for Minor.
*216 HALLER, Acting P.J.
Marvin P., who is the stepfather of T.R. and has lived in the same household as the child and her mother for seven years, appeals an order denying him presumed father status in T.R.'s dependency case. T.R. was declared a dependent of the juvenile court after an allegation that she was at substantial risk of being sexually abused based on Marvin's history of molesting other children and reports of inappropriate conduct by Marvin with T.R. (Welf. & Inst.Code, § 300, subd. (d).)
In contending his application for presumed father status should have been granted, Marvin claims he met the criteria of Family Code section 7611, subdivision (d),[1] and the presumption of paternity was not rebutted. We disagree and affirm.

PROCEDURAL AND FACTUAL BACKGROUND
Marvin is a registered sex offender, having been convicted in 1993 of three counts of lewd and lascivious conduct with a child under the age of 14 (Pen.Code, § 288, subd. (a)) and sentenced to six years in prison. Marvin was released in 1996 and subsequently met T.R.'s mother while both were living at a halfway house connected to a work furlough program. After completing the program, Marvin and T.R.'s mother began living together; T.R. was three at the time. Marvin and T.R.'s mother were married on October 18, 2003.
In October 2004, the San Diego County Health and Human Services Agency (Agency) began investigating reports that T.R., who was then 10 years old, was at substantial risk of sexual abuse by Marvin. T.R.'s older sister told the social worker that she observed T.R. lying over Marvin's lap with her pants and underwear around her ankles. The maternal grandmother related that she had observed Marvin and T.R. lying in bed under the covers and other inappropriate conduct by Marvin with T.R.
The social worker reported that the circumstances surrounding these incidents were similar to those involving the 1993 molestations. For example, a 13-year-old girl reported that while she was sleeping, Marvin lay down next to her, touched her legs, attempted to pull her shorts off, and attempted to put his hands inside her shorts. Later, Marvin lay down on the couch behind the girl and tried to pull her shorts off and she felt Marvin's "thing" rubbing against her leg. Also, a 10-year-old girl reported that Marvin rubbed her leg, put his hand under her underwear, and began rubbing her vagina before he digitally penetrated her.
*218 T.R.'s mother told the social worker that she believed her relatives were making the current accusations against Marvin because of a family feud. The mother was unaware that Marvin was a registered sex offender who had been convicted of sexual abuse of young girls.[2] The mother also noted that T.R. denied being touched inappropriately by Marvin. Nonetheless, the mother had obtained a temporary restraining order, enjoining Marvin from having contact with T.R.
The mother reported she was living on the streets when she became pregnant with T.R. and did not know the identity of T.R.'s biological father. The mother also told the social worker that when she became pregnant with T.R. she was still married to her second husband, but they had separated by that time.
The mother also said that T.R. believed Marvin was her biological father because he had raised her since she was three years old. In July 2004, the mother petitioned the court to add Marvin's name to T.R.'s birth certificate so he could be listed as her biological father.
On November 12, 2004, Agency filed a dependency petition on behalf of T.R., alleging T.R. was at risk of being sexually abused (Welf. & Inst.Code, § 300, subd. (d)) based on the reports of the sister and grandmother and on Marvin's history of sexually abusing girls. T.R. was detained with her mother on the condition that Marvin move out of the home and have no contact with T.R. Marvin requested presumed father status, and Agency requested a hearing on the request.
In seeking presumed father status, Marvin noted that throughout the time he had lived with T.R.  from 1996 until November 2004  he had held T.R. out as his own daughter and had identified her as his daughter to everyone with whom he had been in contact. Also, throughout this period, Marvin has provided T.R. with all of her necessities, including tuition at a private school. After Marvin married T.R.'s mother in 2003, T.R. took Marvin's last name. Marvin and his wife had agreed that if they were to divorce, Marvin and T.R. would continue to maintain their father-daughter relationship with Marvin continuing his support obligations to T.R.
On January 24, 2005, T.R.'s mother submitted to the dependency petition, which the juvenile court sustained. The court declared T.R. a dependent child and ordered the mother to comply with her case plan.
On January 31, 2004, after a contested special hearing, the court denied Marvin's request for presumed father status. The court found that Marvin was not a presumed father under section 7611, subdivision (d), because, in light of his sexual abuse history, his sexual abuse of T.R. was fundamentally inconsistent with the role of a parent. Alternatively, the court ruled that if Marvin met the criteria for a presumption of fatherhood, that presumption was rebutted because of his actions, which were fundamentally inconsistent with the role of a parent.[3]

*219 DISCUSSION
Marvin contends he met his burden to show he deserved presumed father status under section 7611, subdivision (d), and Agency did not meet its burden to overcome his evidence. We disagree.

Relevant Law
Dependency law recognizes three types of fathers: presumed, alleged and biological. (In re Zacharia D. (1993) 6 Cal.4th 435, 449, fn. 15, 24 Cal.Rptr.2d 751, 862 P.2d 751; see Welf. & Inst.Code, § 361.5; compare In re Crystal J. (2001) 92 Cal.App.4th 186, 190, 111 Cal.Rptr.2d 646 [recognizing a fourth category of "de facto fathers" for those who have assumed the role of parent on a day-to-day basis]; In re Jerry P. (2002) 95 Cal.App.4th 793, 801, 116 Cal.Rptr.2d 123 [same].)
An alleged father is a man who may be the father of the child but who has not established biological paternity or presumed father status. (In re Zacharia D., supra, 6 Cal.4th at p. 449, fn. 15, 24 Cal.Rptr.2d 751, 862 P.2d 751.) A biological father is one whose paternity of the child has been established, but who has not established that he qualifies as the child's presumed father. (Ibid.) A presumed father is one who meets one or more specified criteria listed in section 7611 (formerly Civ.Code, § 7004, subd. (a)). (In re Zacharia D., supra, at p. 449, 24 Cal.Rptr.2d 751, 862 P.2d 751.) Section 7611 sets forth a number of rebuttable presumptions of paternity, mostly concerned with various forms of marriage or attempted marriage to the child's mother. (See § 7611, subds. (a)-(c).) "The statutory purpose of section 7611 is to distinguish between those fathers who have entered into some familial relationship with the mother and child and those who have not." (In re Sabrina H. (1990) 217 Cal.App.3d 702, 708, 266 Cal.Rptr. 274.) At issue here is the presumption of paternity that arises when a man "receives the child into his home and openly holds out the child as his natural child." (§ 7611, subd. (d).)
A father's status is significant in dependency cases because it determines the extent to which the father may participate in the proceedings and the rights to which he is entitled. (In re Christopher M. (2003) 113 Cal.App.4th 155, 159, 6 Cal.Rptr.3d 197.) "Presumed father status ranks highest." (In re Jerry P., supra, 95 Cal.App.4th at p. 801, 116 Cal.Rptr.2d 123.) Presumed father status entitles the father to appointed counsel, custody (absent a finding of detriment), and a reunification plan. (Welf. & Inst.Code, §§ 317, subd. (a), 361.2, subd. (a), 361.5, subd. (a).)[4]
Paternity presumptions are driven not by biological paternity, but by the state's interest in the welfare of the child and the integrity of the family. (In re Nicholas H. (2002) 28 Cal.4th 56, 65, 120 Cal.Rptr.2d 146, 46 P.3d 932.) A biological father can be a presumed father, but is not necessarily one; and a presumed father can be a biological father, but is not necessarily one. (In re Jerry P., supra, 95 Cal.App.4th at p. 801, 116 Cal.Rptr.2d 123.) "Presumed fatherhood, for purposes of dependency proceedings, denotes one *220 who `promptly comes forward and demonstrates a full commitment to his parental responsibilities  emotional, financial, and otherwise[.]'" (Id. at pp. 801-802, 116 Cal.Rptr.2d 123, quoting Adoption of Kelsey S. (1992) 1 Cal.4th 816, 849, 4 Cal.Rptr.2d 615, 823 P.2d 1216.) A presumed "father's rights flow from his relationship (or attempted relationship) to the mother and/or child and not merely from his status as the biological father." (In re Sarah C. (1992) 8 Cal.App.4th 964, 972, 11 Cal.Rptr.2d 414.) The presumed father's commitment to the child is a key consideration. (Ibid.)
One who claims he is entitled to presumed father status has the burden of establishing, by a preponderance of the evidence, the facts supporting that entitlement. (In re Spencer W. (1996) 48 Cal.App.4th 1647, 1653, 56 Cal.Rptr.2d 524.) A presumption arising under section 7611 is a "rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." (§ 7612, subd. (a).)

Analysis
We begin by observing that Marvin was T.R.'s stepfather, having married the child's mother. (In re Jodi B. (1991) 227 Cal.App.3d 1322, 1328, 278 Cal.Rptr. 242.) A stepfather does not have the right to reunification services. (Id. at pp. 1328-1329, 278 Cal.Rptr. 242.) We also note that but for the sexual connotations of his inappropriate behavior with T.R., which directly led to the filing of the dependency petition, Marvin most likely would have qualified for de facto parent status by virtue of the long time he has taken care of and reared the child. (See In re Kieshia E. (1993) 6 Cal.4th 68, 71, 80, 23 Cal.Rptr.2d 775, 859 P.2d 1290 [non-parent disqualified as de facto parent when his sexual or serious physical abuse led to dependency].) "A person becomes a de facto parent by application to the court when he or she has participated in the day-to-day care and rearing of the child over an extended period of time." (Clifford S. v. Superior Court (1995) 38 Cal.App.4th 747, 751, 45 Cal.Rptr.2d 333; see also Cal. Rules of Court, rule 1401(a)(8).) However, Marvin did not apply for de facto parent status and that issue is not before us.[5]
The relevant question before us is whether Marvin adequately demonstrated under section 7611, subdivision (d), that he was deserving of presumed father status by "receiv[ing] the child into his home and openly hold[ing] out the child as his natural child."
In determining whether a man has "receiv[ed] a child into his home and openly h[eld] out the child" as his own (§ 7611, subd. (a)), courts have looked to such factors as whether the man actively helped the mother in prenatal care; whether he paid pregnancy and birth expenses commensurate with his ability to do so; whether he promptly took legal action to obtain custody of the child; whether he sought to have his name placed on the birth certificate; whether and how long he cared for *221 the child; whether there is unequivocal evidence that he had acknowledged the child; the number of people to whom he had acknowledged the child; whether he provided for the child after it no longer resided with him; whether, if the child needed public benefits, he had pursued completion of the requisite paperwork; and whether his care was merely incidental. (See, e.g., Adoption of Kelsey S., supra, 1 Cal.4th at p. 849, 4 Cal.Rptr.2d 615, 823 P.2d 1216; In re Sarah C., supra, 8 Cal.App.4th at p. 973, 11 Cal.Rptr.2d 414; In re Spencer W., supra, 48 Cal.App.4th at pp. 1653-1654, 56 Cal.Rptr.2d 524; In re Elijah V. (2005) 127 Cal.App.4th 576, 583, 25 Cal.Rptr.3d 774.)
Unlike the typical presumed father applicant (see, e.g., Adoption of Kelsey S., supra, 1 Cal.4th 816, 4 Cal.Rptr.2d 615, 823 P.2d 1216), Marvin is not T.R.'s biological father, and his relationship with her did not begin at her birth or shortly thereafter. Rather, Marvin did not know T.R. until she was at least three years old. Since then, there is substantial evidence that he openly acknowledged T.R. as his daughter, provided financial support, and received her in his home. However, these positive factors cannot be viewed in a vacuum. Marvin is a registered sex offender who was convicted of and imprisoned for molesting young girls. Further, Marvin was considerably less than candid about disclosing his criminal history to T.R.'s mother throughout their long-time relationship and subsequent marriage. Given this background, Marvin's conduct with T.R. is more than suggestive of child molestation and certainly inimical to T.R.'s welfare and well-being. Moreover, the current allegations of molestation were found to be true by clear and convincing evidence when the dependency petition was sustained, and are not challenged on appeal.
Marvin's conduct was antithetical to a parent's role and was a blatant violation of parental responsibilities. It more than counterbalanced the factors favoring Marvin's presumed father status. After all, the premise behind the category of presumed father is that an individual who has demonstrated a commitment to the child and the child's welfare  regardless of whether he is biologically the father  is entitled to the elevated status of presumed fatherhood. (See In re Zacharia D., supra, 6 Cal.4th at p. 451, 24 Cal.Rptr.2d 751, 862 P.2d 751.) "In dependency proceedings ... the purpose of section 7611 ... is to determine whether the alleged father has demonstrated a sufficient commitment to his parental responsibilities to be afforded rights not afforded to natural fathers  the rights to reunification services and custody of the child." (In re Jerry P., supra, 95 Cal.App.4th at p. 804, 116 Cal.Rptr.2d 123.) If an individual can qualify for presumed father status based on his good deeds consistent with parental responsibilities, it follows that under certain circumstances he can be disqualified by repugnant conduct that is detrimental to the child. (Cf. County of Orange v. Leslie B. (1993) 14 Cal.App.4th 976, 980-983, 17 Cal.Rptr.2d 797 [refusing to apply conclusive presumption of § 7540 when to do so would undermine underlying purpose of statute]; Comino v. Kelley (1994) 25 Cal.App.4th 678, 685, 30 Cal.Rptr.2d 728 [same].)
Assuming arguendo that the juvenile court should have applied the section 7611, subdivision (d) presumption of presumed father status, the error was harmless because the presumption was more than amply rebutted. The Legislature, in its wisdom, made the presumptions of fatherhood it created in section 7611 rebuttable presumptions, affording the court the discretion to rebut the presumption if it is fitting *222 to do so. (§ 7612, subd. (a) ["may be rebutted in an appropriate action only by clear and convincing evidence"].) It is up to the court to determine whether the presumption should be rebutted in light of the circumstances of the case. (In re Nicholas H., supra, 28 Cal.4th at p. 63, 120 Cal.Rptr.2d 146, 46 P.3d 932; In re Jesusa V. (2004) 32 Cal.4th 588, 603-604, 10 Cal.Rptr.3d 205, 85 P.3d 2.)
Here, there was substantial evidence to support the court's conclusion the presumption had been rebutted. First and foremost, there was Marvin's inappropriate conduct with T.R. coupled with his prior convictions for sexually molesting children. Furthermore, Marvin was not T.R.'s biological father and he did not bring her into his home until she was three years old. The juvenile court acted well within its discretion in finding the presumption under section 7611, subdivision (d) was rebutted. (In re Nicholas H., supra, 28 Cal.4th at p. 63, 120 Cal.Rptr.2d 146, 46 P.3d 932.)

DISPOSITION
The order is affirmed.
WE CONCUR: McDONALD and McINTYRE, JJ.
NOTES
[1] All further statutory references are to the Family Code unless otherwise specified.
[2] When Marvin met T.R.'s mother, he told her that he had been imprisoned for six years. When she asked about the charges, Marvin said it was for touching somebody but he did not remember the details. Marvin also said he was innocent, but pleaded guilty to get it over with.
[3] Subsequent to Marvin's filing of this appeal challenging the denial of presumed father status, the juvenile court placed T.R. with her mother and terminated jurisdiction. This is reflected in the juvenile court's minute order for July 26, 2005. We have taken judicial notice of the minute order. (Evid.Code, §§ 452, subd. (d), 459, subd. (a).) Under ordinary circumstances, this development would render the appeal moot. However, the minute order also refers to the case being referred to the Department of Child Support Services with directions that Marvin comply with orders resulting from the referral. Because the potential for further proceedings exists, we conclude it is appropriate for us to resolve the issues Marvin raises on appeal.
[4] The juvenile court may provide services to a biological father if it determines that the provision of services will benefit the child. (Welf. & Inst.Code, § 361.5, subd. (a).)
[5] Agency and counsel for T.R. have asked us to establish a bright-line test for those seeking presumed father status that would automatically disqualify applicants who have committed sexual or serious physical abuse on a child leading to the institution of the dependency proceeding. In other words, these parties urge we adopt the same test that our Supreme Court set forth in In re Kieshia E., supra, 6 Cal.4th 68, 23 Cal.Rptr.2d 775, 859 P.2d 1290, for de facto parent applicants. Given the substantial differences between de facto parents and presumed fathers, we decline to implement such a reflexive rule, especially where, as here, jurisdiction has terminated and virtually every issue is moot. (See footnote 3.)