Filed 7/23/14  In re Bianca G. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re BIANCA G., a Person Coming Under the Juvenile Court Law. | B253116 (Los Angeles County Super. Ct. No. DK00103 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. BRIAN G., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Carlos E. Vasquez, Judge.  Affirmed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court found that Brian G. (Brian) is not the presumed father of five-year-old Bianca G. It found instead that Brian's status is limited to that of an alleged father. The court concluded that because Brian is not the presumed father, he is not entitled to reunification services as to Bianca. Brian appeals this determination. Cynthia P. (Mother) is not a party to this appeal. We affirm because substantial evidence supports the court's finding and orders.

## BACKGROUND

### A. The detention report

In July 2013, the Department of Children and Family Services (DCFS) reported the following in connection with a detention hearing before the juvenile court to determine whether the minor should be removed immediately from the care of Mother.

Mother and her current boyfriend, George G., became involved in a violent altercation in July 2013, which was reported to DCFS. When interviewed, Mother told DCFS that Brian was "incarcerated in federal jail for capital murder, racketeering, extortion and connection with the gang MS (mara salvatruchas)." Mother said she had been hospitalized twice previously for attempting suicide. She stated "she needs time alone, time to think and she needs help [and] she just wants to die." Bianca was removed from Mother's custody and placed with maternal aunt Sabrina P.

### B. The section 300 petition

Thereafter, DCFS filed an amended Welfare and Institutions Code section 300 petition against Mother and Brian pursuant to subdivisions (a) (serious physical harm) and (b) (failure to protect).[1] Ultimately, Mother pleaded no contest to two counts alleging failure to protect. All other allegations against Mother and Brian were dismissed.

### C. The jurisdictional and dispositional report

On September 25, 2013, in connection with a jurisdictional and dispositional hearing, DCFS made a report that included the following. Mother told DCFS she began

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

dating Brian in 2005. Bianca was born in 2007. Mother and Brian did not marry. They both believed Brian was Bianca's biological father. Brian had not been present at Bianca's birth, did not sign Bianca's birth certificate, and did not file any other documents establishing his paternity. Mother stated, "'I wouldn't consider that we were living together. He was mostly doing stuff for the gang. He wasn't around when the baby was born. He didn't support me. He lived with me for about three months after the baby was born, but then I kicked him out.'" Brian was incarcerated for racketeering and murder in 2009 and faces a possible life sentence. Mother stated she and Bianca visited Brian in prison once a week for two years and that "[Brian] holds himself [out] as the biological father" of Bianca.

Brian stated to DCFS that he and Mother had begun dating in 2007, and that he had been "'in and out of jail'" during their relationship. They only had been "'physically together for a few months.'"

Bianca told DCFS that her father's name is "'Brian'" and he "'works with the police.'" She stated that she "'sometimes'" talked to him on the phone and visited him. During their conversations, she told him that she loved and missed him.

Paternal grandmother stated that she had "'on and off'" contact with Mother and Bianca. She saw Bianca "'once a month or once every three weeks. . . . [In the past], I couldn't see [Bianca] for a year.'"

Maternal aunt Sabrina P. stated that "'[w]hen [Brian] was around [Bianca], he was very caring. He always changed her diaper and played with her." Sabrina also said that after Bianca had been placed in her home, Brian had called Bianca regularly.

DCFS recommended that no reunification services be offered to Brian "as he is an alleged father, is incarcerated for violent crimes, and will be incarcerated longer than Family Reunification services will be offered." DCFS stated that "reunification services would be detrimental to the child as his length of incarceration will exceed the family reunification period allowed to him."

**D. The jurisdictional and dispositional hearing**

At the September 25, 2013 jurisdictional and dispositional hearing, DCFS argued that Brian was not the presumed father, but simply an alleged father, and therefore not entitled to reunification services. DCFS observed he was not present at Bianca's birth, he did not sign the birth certificate, he and Mother were not married, he lived with Bianca for only three months until Mother had him leave the house, and he had been incarcerated for the "last 4 years, almost the whole duration of this child's life." Brian argued he should be found to be a presumed father, and therefore entitled to reunification services, because he had held himself out to be Bianca's father. Bianca joined with DCFS, arguing "there is nothing to indicate that other than the small three-month period that [Brian] has actually been a part of the minor's life." Mother also joined with Bianca and DCFS. The juvenile court found Brian was not the presumed father, but was simply an alleged father, noting that "Mother indicates that he lived with her for 3 months after the baby was born, but that is it. That is the extent of the information that we have. We don't have anything in addition to that."

The juvenile court denied Brian's request for family reunification services because he was not the presumed father and stated that if Brian's circumstances changed, he could file a section 388 petition, seeking a modification of the court's order due to a change of circumstances. Brian appealed.

**DISCUSSION**

**A. Standard of review**

""""When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]"' [Citation.] While substantial evidence may consist of inferences, such inferences must rest on the evidence; inferences that are the result of speculation or conjecture cannot

4

support a finding. [Citation.]" (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1258–1259.) "[W]e must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.)

**B. Substantial evidence supported the juvenile court's finding that Brian was not a presumed father and therefore was not entitled to reunification services**

Brian contends the evidence was insufficient to support the juvenile court's finding that he was not a presumed father and therefore was not entitled to reunification services. We disagree.

"The Uniform Parentage Act (Fam. Code, § 7600 et seq.) (Act) provides the statutory framework by which California courts make paternity determinations. [Citations.] Under this statutory scheme, California law distinguishes 'alleged,' 'biological,' and 'presumed' fathers. [Citation.] 'A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an "alleged" father. [Citation.]' [Citation.] 'A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status . . . .' [Citation.]" (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018, fn. omitted.) Only a presumed father is entitled to receive reunification services. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 451.)

Family Code section 7611 provides a person is presumed to be the natural parent of a child if the person "receives the child into his or her home and openly holds out the child as his or her natural child." (Fam. Code, § 7611, subd. (d).)

In determining whether a man has received a child into his home and held the child out as his own, the courts look to whether the man seeking presumed status "actively helped the mother in prenatal care; whether he paid pregnancy and birth expenses commensurate with his ability to do so; whether he promptly took legal action to obtain custody of the child; whether he sought to have his name placed on the birth certificate; whether and how long he cared for the child; whether there is unequivocal evidence that he had acknowledged the child; the number of people to whom he had

5

acknowledged the child; whether he provided for the child after it no longer resided with him; whether, if the child needed public benefits, he had pursued completion of the requisite paperwork; and whether his care was merely incidental." (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1211.)

*In re Spencer W.* (1996) 48 Cal.App.4th 1647 (*Spencer W.*) offers guidance. In that case, Leonard B. argued he was the minor's presumed, rather than alleged, father. The Court of Appeal determined Leonard had not carried his burden of establishing that he received the minor into his home and held the minor out as his natural child, noting that the evidence "permitted the conclusion that Leonard did not receive the child into *his* home, but instead that mother permitted Leonard to reside in *her* home, and that Leonard's residence with [the minor] was not demonstrative of Leonard's commitment to the child but reflected that Leonard acted out of personal convenience and self-interest. This conclusion is amply supported by these facts: (1) mother paid for the apartment (and apparently most other expenses); (2) she supported an unemployed Leonard; and (3) when mother's funding ceased Leonard stopped residing with Spencer." (*Id.* at p. 1653.)

The appellate court held "the evidence showed Leonard claimed paternity to his friends and family but was unwilling to proclaim paternity when there might have been some cost to him (i.e., reduced AFDC payments). Leonard also failed to take formal steps to place his name on the birth certificate, to establish paternity by legal action, or to assume the financial obligations for child support. Leonard took no steps to assert his parental rights when the maternal grandparents denied Leonard access to Spencer. [Citation.] Finally, except for a few phone calls Leonard made to a social worker, his years in prison were marked by an indifference toward establishing or maintaining a parental relationship with Spencer." (*Spencer W.*, *supra*, 48 Cal.App.4th at p. 1654.)

As in *Spencer W.*, Mother, who was not married to Brian, allowed him to reside with her. Brian did not establish or provide a home for Mother and Bianca. Brian lived with Bianca for only three months after she was born, far less time than Leonard in *Spencer W.* During that time, Brian was "'mostly doing stuff for the gang,'" to the extent

6

that Mother did not consider them as "'living together.'" Brian did not provide support for Mother, and she ultimately "'kicked him out.'" Brian acknowledged he and Mother had only been "'physically together for a few months.'"

Brian cites *Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, footnote 7, for the proposition that the time during which a presumed parent resides with the minor may be of short duration. *Charisma R.*, however, required much more than Brian presents here to support a finding that a person is a presumed parent. *Charisma R.* states that "receipt of the child into the home must be sufficiently unambiguous as to constitute a clear declaration regarding the nature of the relationship." (*Charisma R.*, at p. 374.) In determining that the presumed parent had received the child into the home, the appellate court in *Charisma R.* concluded substantial evidence showed the parents had lived together for five years, the apartment was in the name of the parent seeking to be designated the presumed parent, the parent seeking presumed status brought the child into their apartment, and the parent seeking presumed status shared parenting responsibilities, including full-time care during the day and care at night. (*Id.* at pp. 374–375.) There is no evidence that Brian received Bianca into the home in a similarly unambiguous manner. We disagree with Brian's argument that Bianca's visits to him in prison as well as the three-month period when he lived with Mother and Bianca "establish the 'receiving' element of [Family Code] section 7611[, subdivision] (d).'"

Further, although there is evidence that Brian acted lovingly toward Bianca on the occasions when he saw her, that Mother brought Bianca to visit him in prison, and that family members believed him to be Bianca's biological father, there is no evidence that Brian was active in Bianca's care or that his care was other than incidental. Rather, Brian was not present at Bianca's birth, did not sign her birth certificate, and did not file any other documents establishing his paternity. Brian never supported Bianca and has been incarcerated for the majority of Bianca's life. Although Bianca informed DCFS that she told Brian she missed and loved him, the evidence supports the conclusion that their relationship was superficial and that she regarded him as more of a friendly visitor than a

7

father. Accordingly, we conclude substantial evidence supports the juvenile court's determination Brian failed to establish that he held out Bianca as his natural child.

Viewing all conflicts in favor of the order and drawing all reasonable inferences in support of the judgment, as we must (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185), we conclude substantial evidence supports the juvenile court's finding that Brian was not a presumed father and therefore was not entitled to reunification services (see *In re Zacharia D.*, *supra*, 6 Cal.4th at p. 451).

## DISPOSITION

The September 25, 2013 jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED.


                                                    MILLER, J.*

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

---

* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8