Filed 2/2/22  In re A.C. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.C., et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,  Plaintiff and Respondent,  v.  A.C.,  Defendant and Appellant. | G060476  (Super. Ct. Nos. 20DP0831 & 20DP0832)  O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Robert Gerard, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

*      *      *

A.C. (Mother) appeals from the juvenile court dispositional findings and orders removing her child, A.C., from her custody. Additionally, Mother appeals the court's order limiting her visitation with A.C. to 16 supervised hours per week. She also contests the court's denial of her request for presumed parent status as to her stepson, M.C. We find no error and affirm the court's orders.

FACTS

## I. *Parties*

Before delving into the facts of this case, it is helpful to explain the parties' relationships. This appeal concerns Mother and Father and minor, A.C. Also involved is A.C.'s older paternal half-sibling, M.C. When this case began, Father maintained full custody of M.C.

Father separated from M.C.'s biological mother, B.S., in 2011, when M.C. was an infant. From 2013 to 2019, B.S. had no contact with M.C. In 2015, when Mother and Father began their relationship, Mother started helping raise M.C., then four years old, as her own son and she became M.C.'s maternal figure.

## II. *Petition and Detention*

In July 2020, then nine-year-old M.C. and then three-year-old A.C. were taken into protective custody following Mother and Father's domestic violence incident. This was based upon an argument between the parents that escalated to a physical altercation. Father physically assaulted Mother. Mother responded by grabbing a machete and using it against Father. Each reported the other as the primary aggressor. Mother had bruises and/or red marks on her chest and a red scratch on her wrist. Mother reported Father was under the influence of substances and punched her multiple times in the head, such that on the following day, she continued to experience pain all over her body and her head. The children were present for at least part of the altercation.

2

Sustained allegations included Mother and Father exposed the children to domestic violence in the home and they had a documented history of domestic violence. Law enforcement and Child Protective Services responded on multiple occasions due to domestic violence and concerns regarding substance abuse from 2019 through this incident.

Sustained allegations also included Father had unresolved anger management issues, an unresolved substance abuse problem, and a criminal history. As to Mother, sustained allegations asserted an unresolved substance abuse problem and unresolved mental health issues. It further alleged drugs and drug paraphernalia were observed in plain view where parents resided with the children.

The petition further alleged Mother was verbally abusive to stepson M.C., telling him, "'You're not my child,'" "'You make me sick,'" and "'I can't stand the sight of you.'" It also alleged Mother would withhold food from M.C. which she fed to A.C. Mother denied this allegation.

The juvenile court detained the children in July 2020. The court ordered the Orange County Social Services Agency (SSA) to provide voluntary reunification services to both parents, including drug testing. It also authorized Mother four hours of monitored visitation with A.C. per week. It authorized Father to visit both children eight hours per week, monitored. The parents were not authorized to visit together. The court did not authorize visitation between Mother and M.C., over Mother's objection. It noted Mother had no standing as to M.C.

III. *Jurisdiction and Disposition*

A. *SSA Reports*

SSA recommended the juvenile court sustain the petition and the children be declared dependents. As to disposition, SSA recommended the court offer Father and B.S. family reunification services as to M.C., and offer Father and Mother reunification services as to A.C.

3

After the July 2020 detention hearing, Mother began residing with her mother and immediately began participating in services, visiting with A.C., and seeking employment. Visits between Mother and A.C. were positive.

At the end of September 2020, Mother and Father resumed living together. In November 2020, both M.C. and Mother asked SSA if they could have visits. SSA continued to have concerns based upon M.C.'s statements at the beginning of the case that he did not want to have visits with Mother and because she treated him differently compared to A.C.

In January 2021, Mother informed SSA she was 17 weeks pregnant with a baby girl. The baby was Father's.

By the end of January 2021, Mother attended substance abuse programs, consistently drug tested with negative results except for missed tests, completed a 12-week conflict resolution behavioral skills parenting program, attended a personal empowerment program for domestic violence and a trauma processing class, attended counseling, and was employed.

The court increased Mother's visitation with A.C. to a minimum of eight hours per week. SSA reports indicated the visits were loving, appropriate, and affectionate. The court denied Mother's requests to visit with M.C.

In February 2021, Mother acknowledged she was participating in services while simultaneously maintaining a relationship with Father, who was not participating in services. Mother reported she remained financially dependent on Father, as she could not afford housing on her own. Mother stated she would choose her children over Father.

In early April 2021, Mother informed SSA she was residing with a friend in Temecula and no longer with Father, as he was not drug testing nor willing to participate in services. Mother informed the social worker that she was not necessarily on bad terms with Father, but they were no longer living together.

4

SSA interviewed M.C.'s mother, B.S. B.S. had not had contact with M.C. in several years. B.S. shared she lived a very traumatic life with her mother and needed to stay away for a while. One of the reasons she had left Father was his substance abuse. They used drugs including heroin and marijuana together, and she needed to remove herself from his influence. B.S. reported she had been clean for about eight years and she was willing to drug test. She had a stable home and a family now in New Mexico and felt ready to have M.C. in her care and wanted visits. Before disposition, B.S. participated in therapy and a parenting class.

B. *Hearings and Testimony*

SSA recommended the children be declared dependents of the court, custody be removed from all parents, and family reunification services be granted. Social worker Carolina Barrantes testified she had concerns regarding Mother's substance use despite Mother consistently testing negative for any substance. Barrantes stated Mother completed all aspects of her case plan apart from anger management, which she had enrolled in on her own and was participating in online.

Barrantes maintained there was no evidence Mother was able to apply the skills learned in her services and that she lacked insight. Mother's ongoing relationship with Father demonstrated this lack of insight. Barrantes also expressed concern Mother was codependent on Father for support and care.

Mother testified she loved Father and wanted to work through things and remain a couple. Mother stated she and Father remain married and talked often but were separated because he was not on the same path as her. Mother acknowledged Father's failure to participate in services placed the children at risk. Mother also testified that if the court granted her request to return A.C. to her care, she would not allow Father unauthorized contact.

Mother acknowledged the case started because of domestic violence and substance abuse. Mother testified that through her programs she had learned patience and

5

to keep moving forward on the right path. Mother testified that her coping mechanism had been faulty in the past and that she could make it through the dependency process in a healthier manner and in a more beneficial way to both herself and the children.

On June 2, 2021, during the dispositional proceedings, the court increased Mother's supervised visits with A.C. from 8 to 16 hours per week. In making the new visitation order, the court acknowledged Mother had "diligently work[ed] towards getting the train on the tracks and making sure the train [was] going in the right direction." The court also noted the bond between Mother and A.C. The court denied Mother's request for supervised visits with M.C.

Mother continued her testimony and stated she considered M.C. as one of her sons. Mother testified she attended every school function, helped in his classroom, and drove him to and from school. She stated they share a really strong relationship.

C. *Findings and Orders*

In February 2021, the court noted the parties planned to stipulate to a petition amended by interlineation and jurisdiction as to A.C. It went forward with a contested jurisdiction hearing as to M.C. only. In April 2021, the court amended the petition by interlineation and sustained it. It then proceeded with disposition.

The court found by clear and convincing evidence that Welfare and Institutions Code section 361, subdivision (c)[1] applied, that to give custody to the parents would be detrimental to A.C., and that A.C. must be removed from parental care. The court found Mother made moderate progress toward alleviating or mitigating the causes necessitating removal. It offered Mother and Father family reunification services. The court ordered Mother's visits with A.C. to remain at 16 hours, with SSA authorized to liberalize or restrict.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

6

As to M.C., the court denied Mother's request for presumed mother status. The court ordered a 28-day visit for M.C. with B.S. in New Mexico, with supervised telephonic or video conference visits with Mother during that period.

DISCUSSION

Mother argues the juvenile court erred by removing A.C. from parental custody because its dispositional order was not supported by the record. She also alleges the court abused its discretion when it denied her requests for more frequent visits with A.C. Finally, Mother contends the court improperly denied her presumed parental status as to M.C. Her contentions lack merit.

I. *A.C.'s Removal from Parental Custody*

Mother asserts the juvenile court improperly removed A.C. from parental custody. She states removal was unsupported by the record. Mother's argument is unpersuasive.

We are mindful of the standard of review challenging a juvenile court's dispositional order removing a child from parental custody. We review such an order for substantial evidence, "'bearing in mind the heightened burden of proof.' [Citation.]" (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.) "'Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt.' [Citation]" (*Ibid*.) The question on review is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. (*Ibid*.)

As for the underlying law pertaining to the involuntary removal of a child from parental custody, "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence. . . . [¶] (1) [That] [t]here is or would be a substantial danger to the physical health, safety, protection, or

7

physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . custody." (§ 361, subd. (c)(1).)

Furthermore, "Because we so abhor the involuntary separation of parent and child, the state may disturb an existing parent-child relationship only for strong reasons and subject to careful procedures." (*In re Kieshia E.* (1993) 6 Cal.4th 68, 76.) California law therefore "requires that there be no lesser alternative before a child may be removed from the home of his or her parent." (*In re Jasmine G.* (2000) 82 Cal.App.4th 282, 284 fn. omitted; see § 361, subd. (c)(1).) But ""'[t]he parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." [Citation.]'" (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126.) "'The court may consider a parent's past conduct as well as present circumstances. [Citation.]' [Citation.]" (*Ibid.*)

At issue here is whether there was a substantial risk of injury to the child's physical health, safety, protection or emotional well-being if he or she were returned home, and there are no reasonable means to protect the child. (§ 361, subd. (c)(1).) To remove a child from parental custody, the court must make this specified finding by clear and convincing evidence. (§ 361, subd. (c).)

Mother asserts the trial court erred by removing A.C. from her custody because, as of the hearing in July 2021, there was no longer a threat of substantial risk of injury to the child's physical health, safety, protection or emotional well-being if she were returned home. Mother admits she continued to live with Father for most of the case, but that she moved out as of April 2021. This means her progress removing herself from Father occurred just months before the hearings at issue. Given that the original exercise of dependency jurisdiction concerned domestic violence between Mother and Father a year before, a few months of separation, with continued contact between the parents, is insufficient. Mother argues the court's order was not supported by substantial

evidence because parents had separated and had not yet had another incidence of domestic violence. However, there was ample evidence Mother continued to engage in a relationship with Father, from which the court determined Mother had not distanced herself sufficiently or permanently from Father. Specifically, even after their purported separation, they were still in constant contact. They remained married and talked frequently. They had another baby together.[2]

Additionally, Mother admitted she could not identify the signs Father was using drugs and did not remember the red flags for domestic violence. This evidence, coupled with the facts that Father continued to use drugs and did not engage in services, was sufficient for the court to determine removal was required.

Mother also testified she intended to continue her relationship with Father in the future. She stated she loved him and still wanted to remain a couple. "I want to work through this, work things out. . . . That's the man I chose to marry, and I don't see why we can't work things out even if it's being separated or living together. There's a way that we can overcome this." Substantial evidence supported the court's order.

Additionally, the court also had substantial evidence to determine there were no reasonable means to protect A.C. other than removal. "A court is entitled to infer past conduct will continue where the parent denies there is a problem. [Citation.]" (*In re K.B.* (2021) 59 Cal.App.5th 593, 604.) Mother violated prior court orders, including those prohibiting contact between her and Father or between her and M.C. The court could reasonably infer such violations were ongoing. And, as previously discussed, there was abundant evidence Mother did not appreciate the risk Father posed and would

---

[2] Mother argues the fact that the new baby was allowed to live with her is evidence in support of her ability to have custody of A.C. We, however, decline to speculate on the baby's status, as the record is incomplete as to SSA's reasoning to allow Mother to keep the baby.

not protect the child from him. Mother remained enmeshed with Father such that she could not retain custody. The court did not err by removing A.C. from parental custody.

We note, however, the juvenile court made a clear record of Mother's progress. While it was insufficient at this phase to retain custody of A.C., we emphasize the court's encouraging words to Mother: "the court is confident that [Mother] can keep that trajectory going in a positive direction. I'm really confident you can do that ma'am." It is rare this court sees such inspiring words to a parent. While we affirm the court's orders, we also echo the juvenile court's kind words of encouragement for Mother to continue working towards her goal of regaining custody of A.C.

II. *Visits with A.C.*

Mother asserts the juvenile court abused its discretion when it denied her request for more frequent visits with A.C. We disagree.

The juvenile court may set the frequency and length of visits and impose any other conditions on visitation consistent with the child's best interests under the "'particular circumstances'" of the case. (*In re Shawna M.* (1993) 19 Cal.App.4th 1686, 1690.) During the reunification period, visitation with a parent must be "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) "No visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).) The visitation order is reviewed for abuse of discretion. Under that standard, we determine if the order exceeded the bounds of reason and construe all reasonable inferences in favor of the underlying determination. (*In re J.N.* (2006) 138 Cal.App.4th 450, 459.)

Mother asserts the juvenile court erred when it denied her request for an extended 29-day trial visit or five overnight visits in the paternal grandparent's house. However, as discussed previously, Mother could not be counted on to protect A.C. from Father having unauthorized contact while he was using drugs and from the risk from his unresolved domestic violence issues. The court reasonably determined Mother's lack of insight, evidenced by Mother returning to Father despite domestic violence and his

10

substance abuse issues, was reason to not increase her visitation with A.C. The court did not abuse its discretion.

III. *Presumed Parental Status as to M.C.*

Mother claims the juvenile court improperly declined to find her as M.C.'s presumed parent. Not so.

Under Family Code section 7611, subdivision (d), a parent may be presumed if they "receive[] the child into their home and openly hold[] out the child as their natural child." However, even if a person received a child into their home and openly held that child out as their own, if they acted in a manner inconsistent with the parental role, then the presumption may not lie. (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1211-1212.)

First and foremost, Mother does not challenge the fact that M.C. already has two presumed parents, Father and B.S. The court acted within its discretion when it determined it was not detrimental for M.C. to have only two presumed parents. As to Mother's claim of presumed motherhood as to M.C., she highlights the evidence in her favor, while downplaying the evidence against her.

The court reasonably determined Mother was not "a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection." (Fam. Code, § 7612, subd. (c).) Evidence in support of this determination includes the fact the court sustained a petition which including allegations Mother was verbally abusive to M.C., telling him, "'You make me sick,'" and "'I can't stand the sight of you.'" Additionally, as discussed at length above, Mother exposed M.C. to domestic violence. M.C. reported being fearful of Mother. Additionally, as already discussed, the court correctly determined A.C. could not be returned safely to Mother. The same concerns would prevent M.C. from being placed with her. While we recognize the law allows for more than two presumed parents in certain circumstances, Mother

11

failed to demonstrate she qualified as M.C.'s presumed parent. (Fam. Code, § 7612, subd. (c).)

DISPOSITION

The juvenile court's orders are affirmed.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


ZELON, J.*

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.