Filed 11/16/22  In re Jesse Y. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re JESSE Y., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B320613 (Super. Ct. No. J072972) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JUAN C., <br><br> Defendant and Appellant. | |

Juan C. appeals orders of the juvenile court denying his status as a presumed father, declaring that his biological minor

child is adoptable, and terminating parental rights. (Fam. Code, § 7611, subd. (d); Welf. & Inst. Code, § 366.26, subd. (c)(1).)[1]

This appeal concerns Juan C.'s presumed father status and the adequacy of initial inquiries regarding Indian ancestry of dependent child Jesse Y. We conclude that substantial evidence supports the juvenile court's denial of Juan C.'s presumed father status. We also decide that error in failing to make initial inquiries of extended family members pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law was error, and we conditionally reverse. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 [discussing the "readily obtainable information" rule].)

*FACTUAL AND PROCEDURAL HISTORY*

S.S. (Mother) gave birth to Jesse Y. in October 2021. When she gave birth, Mother had positive toxicology results for amphetamine. In 2019, Mother's two older children became dependents of the juvenile court due to her substance abuse and incidents of domestic violence. Mother then failed to engage in family reunification services and her parental rights to the two older children were terminated.

The Ventura County Human Services Agency (HSA) took Jesse Y. into protective custody at birth. In response to questions from the HSA social worker, Mother declined to name the biological father of Jesse Y. The social worker also questioned Mother regarding possible Indian ancestry. Mother denied that either she or Jesse Y. were members or eligible to become members of an Indian tribe. The social worker later signed and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

submitted an ICWA-020 form, on behalf of Mother, in which Mother denied any Indian membership or ancestry.

On October 19, 2021, the juvenile court held a detention hearing. Mother did not appear at the hearing or at any further court hearings regarding Jesse Y. The court ordered Jesse Y. detained and granted temporary custody and care of the infant to HSA. The juvenile court judge also stated: "[W]e have a history with this mother, and . . . we need to check the siblings' files on the issue of ICWA given that mom is not present and that there may be relatives that we have contact with or can contact to gather that information. But right now, there's no reason to believe this is an Indian child, and right now, ICWA does not apply."

Although Mother refused to name Jesse Y.'s biological father, she informed the HSA social worker that the father's first name was "Juan," and that he was incarcerated. Through research of Mother's arrest records, the social worker learned that Mother had resided with Juan C. and they had been involved in a domestic dispute.

Prior to the jurisdiction and disposition hearing, the HSA social worker contacted Juan C. who confirmed that he had been in a relationship with Mother, had lived with her during her pregnancy, and could be Jesse Y.'s biological father. Juan C. was not present at Jesse Y.'s birth because he was incarcerated from July 2021 through November 2021. He requested that the juvenile court order a paternity test and appoint an attorney to represent him. Juan C. informed the social worker that he would like to be involved in Jesse Y.'s life if paternity was confirmed.

On December 20, 2021, the juvenile court held a jurisdiction and disposition hearing at which Juan C. attended as

3

an alleged father. The court ordered a paternity test and appointed counsel for Juan C., but denied visitation with Jesse Y. pending paternity test results. The court then sustained the allegations of the dependency petition. (§ 300, subds. (b), (j).) The court also found that Mother and Juan C. each had two other minor children (with different partners) who were dependent children and with whom they had failed to reunify. The court then ordered that family reunification services not be provided to Mother and a permanent plan hearing for Jesse Y. be scheduled. (§§ 361.5, subd. (b)(10), (11), (13) [reunification services bypass provisions], 366.26.)

During the pendency of the permanent plan hearing, the paternity test revealed that Juan C. was Jesse Y.'s biological father. Juan C.'s attorney informed the juvenile court that Juan C. did not "have any facts to present to the court at the time regarding presumed father status." The attorney added that Juan C. would file a modification petition prior to the permanent plan hearing. The court then found that Juan C. was Jesse Y.'s biological father and, based upon an ICWA-20 form signed and submitted on Juan C.'s behalf, that neither he nor Jesse Y. are members of or eligible for membership in an Indian tribe. The juvenile court judge stated: "[T]here's no reason to believe this is an Indian child and that ICWA does not apply."

On April 13, 2022, the juvenile court intended to hold a permanent plan hearing. Juan C. was present and requested a contested hearing. The court denied his request because he was a biological, not a presumed father. The court continued the hearing, however, to allow Juan C. to file a modification petition regarding presumed father status.

4

On April 22, 2022, Juan C. filed a modification petition alleging changed circumstances. (§ 388.) Among other things, he stated that he had visited Jesse Y. seven times, during which he fed him, provided clothing and toys, and changed his diapers. Juan C. also stated that he had complied with his probation terms, including drug testing. He requested presumed father status and reunification services.

During an evidentiary hearing prior to the permanent plan hearing, the juvenile court addressed Juan C.'s modification petition. Juan C. testified that he learned that Mother was pregnant while he was incarcerated. She gave birth while he remained incarcerated. When Juan C. was released from jail, he contacted Mother but she would not provide information about Jesse Y., who was then detained and living in foster care. Juan C. requested a paternity test after the HSA social worker contacted him. He admitted that he had recently failed two drug tests for methamphetamine and had missed three drug tests. Also, Juan C. was again confined in local custody.

The juvenile court denied Juan C.'s modification petition, deciding that he did not meet the statutory requirements to be declared a presumed father and that providing him with reunification services would not be in Jesse Y.'s best interests. The court then proceeded to the permanent plan hearing, found that Jesse Y. was adoptable, and terminated parental rights. (§ 366.26.) Jesse Y. had been placed with a non-relative extended family member who had adopted Mother's two older children (half-siblings of Jesse Y.) and the family member intended to adopt Jesse Y.

*ICWA Compliance*

During HSA's investigation of the events giving rise to the dependency, Mother and Juan C. informed the HSA social worker that neither they nor Jesse Y. nor any lineal ancestors were enrolled in an Indian tribe or eligible for membership in an Indian tribe. The HSA social worker filed completed ICWA-020 forms on behalf of Mother and Juan C. to that effect. At the conclusion of the detention hearing, the juvenile court found that ICWA did not apply to Jesse Y., but that HSA should check the dependency files of the half-siblings "on the issue of ICWA [because] . . . there may be relatives that we have contact with or can contact to gather that information." Neither Mother nor other family members appeared at the detention hearing. One month later, the court commented that the extended family caretaker for the half-siblings had not yet been interviewed and it was unknown whether the half-siblings' dependency files had been reviewed. Approximately five months later, however, the court found that "[n]o new information [regarding ICWA] has been discovered to change the previous finding that there's no reason to believe or know that this is an Indian child."

Juan C. appeals and contends that the juvenile court erred by: 1) denying his request for presumed father status, and 2) finding that ICWA was not applicable because HSA and the court did not fully comply with their initial duties of inquiry regarding Indian ancestry. (§§ 224.2, subd. (b), 224, subd. (c).)

*DISCUSSION*

*I.*

Juan C. argues that the juvenile court erred by denying his petition for presumed father status. (Fam. Code, § 7611, subd. (d) ["presumed parent" is one who "receives the child into their

6

home and openly holds out the child as their natural child"].)  He points out that Mother delayed in revealing his identity but that following the finding of paternity, he visited Jesse Y. weekly, purchased him toys and supplies, and cared for him during the visits.

The Uniform Parentage Act (Fam. Code, § 7600 et seq.) provides the statutory framework by which California courts make paternity determinations.  (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018, superseded by statute on other grounds, as stated in *In re Alexander P.* (2016) 1 Cal.App.5th 1262, 1274.) Pursuant to this statutory scheme, California law distinguishes "alleged," "biological," and "presumed" fathers.  (*Ibid.*)  A father whose biological paternity has not been established or who has not achieved presumed father status is an "alleged" father. (*Ibid.*)  "Presumed" fathers are accorded greater parental rights than "alleged" or "biological" fathers.  (*Ibid.*)  Biological fatherhood does not in and of itself qualify a person for presumed father status.  (*Ibid.*)  Rather, "[a] man who has held the child out as his own and received the child into his home is a 'presumed father.' "  (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801.) Presumed fatherhood for purposes of dependency proceedings denotes a man who promptly comes forward and demonstrates a full commitment to his paternal responsibilities – emotional, financial, and otherwise.  (*Id.* at pp. 801-802.)  A statutorily presumed father and the child's mother are entitled to family reunification services in juvenile dependency proceedings. (§ 361.5, subd. (a); *Jerry P.*, at p. 801.)

A man who claims presumed father status has the burden of establishing that status by a preponderance of the evidence. (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1210.)  In determining

7

whether presumed father status has been established, courts consider whether the father: actively helped the mother in prenatal care, paid pregnancy and birth expenses consistent with his financial abilities, sought to have his name placed on the child's birth certificate, cared for the child and for how long, acknowledged the child and to whom, or provided for the child, among other things. (*Id.* at p. 1211.) We review the juvenile court's paternity finding for substantial evidence. (*In re Cheyenne B.* (2012) 203 Cal.App.4th 1361, 1371.)

The juvenile court properly found that Father did not establish that he is a presumed father. Juan C. never received Jesse Y. into his home for even temporary visits and did not request the juvenile court to enter a voluntary declaration of parentage. Juan C. informed the court that he did not have appropriate housing for Jesse Y. or the means to provide for him. Juan C. did not provide evidence that he helped Mother pay for prenatal care or birth expenses despite living with her for many months before Jesse Y.'s birth and knowing that she was pregnant. He also made no attempt to have his name placed on Jesse Y.'s birth certificate or provide evidence that he acknowledged Jesse Y. as his son. Juan C.'s visits with Jesse Y. were limited to weekly one-hour supervised visits in a department store. This presumed father evidence falls short of proof of "a *fully developed parental relationship*" with a child. (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 776.)

Although Mother may have withheld birth information from Juan C., Jesse Y. was removed at birth by HSA and placed in a confidential foster home. Juan C. was not released from incarceration until approximately one month following Jesse Y.'s birth. Based upon the HSA social worker's sleuthing, Juan C.

8

learned of Jesse Y.'s birth and dependency approximately one month following release from incarceration. Any delay occasioned by Mother's refusal to name Jesse Y.'s father was minimal and could not have prejudiced Juan C.

*II.*

Juan C. argues that insufficient evidence supports the juvenile court's ICWA finding because HSA and the court did not fully comply with their initial duties of inquiry. He asserts that the court and HSA should have inquired of him when he appeared in court, reviewed the maternal and paternal half-siblings' dependency case files, and inquired of the pre-adoptive parent who has adopted the maternal half-siblings. Juan C. contends that the termination of parental rights order must be conditionally reversed to ensure compliance with the initial inquiry requirements of ICWA and related California law.

An "Indian child" is defined as an unmarried individual under 18 years of age who is either 1) a member of a federally recognized Indian tribe, or 2) eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); §§ 224.2, subd. (e)(1).) The juvenile court and the county child welfare department have an affirmative and continuing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481.) The duty includes asking the child, parents, extended family members, and others who have an interest in the child whether the child is or may be an Indian child. (§ 224.2, subd. (b).) The court must also inquire of the parties and participants appearing in court whether the child may be an Indian child. (§ 224.2, subd. (c).) We examine the juvenile court's

9

ICWA findings for substantial evidence. (*In re H.V.* (2022) 75 Cal.App.5th 433, 438.)

Here the HSA social worker completed and signed the ICWA-020 forms on behalf of Mother and Juan C., but neither HSA nor the juvenile court queried Juan C. when he appeared in court; the pre-adoptive mother when she briefly appeared in court at the jurisdiction and disposition hearing; or reviewed the dependency files of the half-siblings.

The failure to inquire constitutes reversible error only if there was readily available information that was likely to bear meaningfully upon whether the child is an Indian child. (E.g., *In re Benjamin M.*, *supra*, 70 Cal.App.5th 735, 744 ["the readily obtainable information" rule].) Here the information was readily available from juvenile court appearances and the court and HSA dependency files.

## *DISPOSITION*

The order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and sections 224.2 and 224.3. Following the inquiry, if neither HSA nor the court has reason to believe or to know that the minor child is an Indian child, the order terminating parental rights shall be reinstated.

NOT TO BE PUBLISHED.

GILBERT, P. J.

I concur:

BALTODANO, J.

10

YEGAN, J., Dissenting:

I agree with the determination that affirms the order regarding "presumed father" status.  But I dissent from the conditional reversal for the reasons stated in *In re J.K.* (2022) 83 Cal.App.5th 498 (dis. opn. of Yegan, J.).

NOT TO BE PUBLISHED.


YEGAN, J.

Manuel J. Covarrubias, Judge

Superior Court County of Ventura

_____

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Principal Assistant County Counsel, for Plaintiff and Respondent.