Filed 5/19/25  In re S.O. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.O., a Person Coming Under the Juvenile court Law. | 2d Juv. No. B340698 (Super. Ct. No. 24JD-00026-001) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. M.F., Defendant and Appellant. | |

M.F., the biological father of S.O., appeals the trial court's order denying his Welfare and Institutions Code[1] section 388 petition seeking elevated parental status as a *Kelsey S.* father

---

[1] All further statutory references are to the Welfare and Institutions Code section unless otherwise stated.

(*Adoption of Kelsey S.* (1992) 1 Cal.4th 816 (*Kelsey S.*)).  We conclude substantial evidence supports the trial court's order and affirm the judgment.

*Facts and Procedural Background*

In February 2024, San Luis Obispo Department of Social Services secured a protective custody warrant and detained S.O. after mother and S.O. tested positive for methamphetamine and amphetamine at S.O.'s birth.  The department filed a dependency petition alleging, among other things, S.O.'s positive drug test, mother's refusal to stop breastfeeding S.O. even after being informed of the risks given her positive drug test, mother's admission to using substances throughout her pregnancy, and mother's prior child welfare history.  The department also alleged S.O. was without provision for support because father was unknown.

At the time of S.O.'s birth, father was incarcerated.  He sent four letters to the department claiming to be the biological father of S.O., requesting a DNA test to establish his paternity, and asserting his desire to have custody of S.O.

After DNA test results established that father was S.O.'s biological father, the department filed an amended petition and included new allegations related to father, including that he had been incarcerated for the duration of the case, was unavailable to be protective of the child, and had left S.O. without any provision for support.

Prior to the jurisdiction and disposition hearing, the department social worker met separately with father and mother.  Father admitted that he had "put his hands" on mother in the past but had "decided within himself" he would not do it again.  Father also stated that he and mother planned for S.O.'s birth,

that he rubbed mother's hands and feet while she was pregnant, purchased prenatal vitamins for her, and otherwise cared for her before he was incarcerated. The social worker discussed services that would be beneficial to address safety concerns. The trial court subsequently authorized father to have supervised visitation with S.O. one day per week for one hour.

When mother met with the social worker, she stated that she "genuinely fears" father and that she was "running from him" when he was arrested and sent to prison for being a felon in possession of a firearm. She explained that she believed father "intended to use that firearm to harm or kill her." Mother provided the social worker with hundreds of text messages and dozens of voicemails that she had received from father while she was pregnant. The social worker described the tone in the messages as a "cycle" ranging from father professing his "undying love" for mother, to calling her vulgar names, to threatening her, her loved ones, and his own life to gain mother's compliance. The social worker noted that as mother spoke about father, she had a "physical reaction" and was visibly shaking.

In July 2024, the trial court conducted a three-day, contested jurisdiction and disposition hearing and heard testimony from multiple witnesses, including mother. The department attempted to call father as a witness but he refused to testify on the advice of counsel.

Mother testified that father physically abused her "hundreds of times" during their relationship, including in front of her child from another relationship. Mother testified that father punched her, back fisted her, pushed her to the ground, kicked her, and dragged her by the hair. He blackened her eyes so she could not work, disabled her car so she could not leave, put

an axe through her backdoor, punched holes in the walls and doors of her home, and threatened her with a gun on multiple occasions. When mother was able to escape, father killed her chickens and beat her favorite goat to death, then hung its body from a tree for three months to teach mother not to disobey him. He stole mother's puppy to force her to see him and continued to abuse mother even after he knew she was pregnant with S.O.

The social worker testified that she did not believe it was in S.O.'s best interest for father to receive reunification services due to his extensive criminal history, domestic violence, substance abuse history, and inability to mitigate safety concerns for an infant.

Following the contested hearing, the trial court sustained the amended dependency petition, ordered S.O. removed from parents, and mother to be provided with reunification services. The trial court also granted a juvenile restraining order after hearing protecting mother and S.O. from father. As to father's section 388 petition, the trial court granted the request to change father's designation to "biological father" but denied his request for services and placement after finding that contact with father would be detrimental to S.O.

*Discussion*

Father contends the trial court committed reversible error when it denied his section 388 petition seeking *Kelsey S.* status, which he asserts would have "guarantee[d]" reunification services. He also contends the trial court abused its discretion in denying visitation with S.O., and violated his fundamental right to act as a parent. As we shall explain, father's contentions are meritless.

4

To prevail on a section 388 petition, a petitioner must establish that (1) new evidence or changed circumstances exist, and (2) the proposed change is in the minor's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317.) The petition is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless an abuse of discretion is "clearly established." (*Id.* at p. 318.)

As we explain below, the trial court did not abuse its discretion in denying the petition because substantial evidence supports its finding that father did not meet his burden to establish *Kelsey S.* status.

Dependency laws recognize different types of fathers: presumed, alleged, biological, and de facto. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15; *In re Jerry P.* (2002) 95 Cal.App.4th 793, 801 (*Jerry P*).) Only a presumed father is entitled to reunification services pursuant to section 361.5. (*Zacharia D.,* at pp. 448-449; *In re Julia U.* (1998) 64 Cal.App.4th 532, 540.) A biological father who is not also a presumed father may be offered reunification services at the discretion of the trial court if it finds services will benefit the child. (§ 361.5, subd. (a); *In re J.H.* (2011) 198 Cal.App.4th 635, 644.)

A biological father who asserts he is entitled to *Kelsey S.* rights has the burden to establish "'the factual predicate for those rights.' [Citation.]" (*Adoption of Baby Boy W.* (2014) 232 Cal.App.4th 438, 452 (*Baby Boy W.*).) "Presumed fatherhood, for purposes of dependency proceedings, denotes one who 'promptly comes forward and demonstrates a full commitment to his paternal responsibilities—emotional, financial, and otherwise[.]'" (*Jerry P., supra*, 95 Cal.App.4th at pp. 801-802; *Kelsey S., supra*, 1 Cal.4th at p. 849.)

5

In determining whether a biological father has demonstrated such a commitment, "[a] court should consider all factors relevant to that determination. The father's conduct both *before and after* the child's birth must be considered. Once [he] knows or reasonably should know of the pregnancy, he must promptly attempt to assume his parental responsibilities as fully as the mother will allow and his circumstances permit. In particular, the father must demonstrate 'a willingness himself to assume full custody of the child—not merely block adoption by others.' [Citation.] A court should also consider the father's public acknowledgement of paternity, payment of pregnancy and birth expenses commensurate with his ability to do so, and prompt legal action to seek custody of the child." (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849, fn. omitted.)

We review the trial court's factual findings as to whether father met his burden for substantial evidence. (*Baby Boy W.*, *supra*, 232 Cal.App.4th at p. 452.) We view all factual matters and draw all reasonable inferences in favor of the judgment. (*Ibid.*) We do not evaluate the credibility of witnesses, resolve evidentiary conflicts, or reweigh the evidence. (*Ibid.*) We also do not substitute our decision for that of the trial court. (*Id.* at pp. 452-453.)

Here, father contends he promptly made a full commitment to his parental responsibilities because he (1) wrote four letters to the department immediately after hearing about S.O.'s birth, claiming to be her father and seeking services, and (2) he celebrated S.O. publicly, told family members about mother's pregnancy, asked for pictures of the ultrasound, and picked out a name for the baby. Father also made some positive efforts to support mother during her pregnancy, including rubbing her

6

hands and feet, purchasing prenatal vitamins, and providing a limited offer of financial assistance.

But father's positive efforts "cannot be viewed in a vacuum." (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1211.) As respondent points out, father's opening brief is "devoid of any facts related to the repeated abuse" he inflicted upon mother both before and during her pregnancy with S.O. Yet, in conducting the *Kelsey S.* analysis, the trial court expressly considered "the physical and emotional abuse factors" to be the "most significant factor[s]" in this case.

Mother testified that there were "hundreds" of incidents of physical and emotional abuse perpetuated by father and described many of those incidents in detail, including how he beat her, threatened to kill her, held her captive, destroyed her vehicles and her phone, shot at her, stabbed at her, kidnapped her, and killed her animals. Even after father knew mother was pregnant with S.O., he continued to abuse her and threaten her with violence. The trial court found mother's testimony to be credible and was corroborated by other witnesses.

On this record, substantial—and indeed overwhelming evidence—supports the trial court's finding that father was not entitled to *Kelsey S.* status.

Furthermore, the trial court's determination that it was not in S.O.'s best interest and would be harmful to order reunification services was also supported by substantial evidence. Indeed, the trial court found that father posed a danger to the community, to mother, and to S.O. Thus, this contention is without merit. (See *Adoption of Emilio G.* (2015) 235 Cal.App.4th 1133, 1147, 1152-1153 [declining to disturb trial

court's discretionary findings where there was "considerable evidence" of father's physical and emotional abuse of mother].)

Father's challenge to the denial of visitation with S.O. is equally without merit. A juvenile court has discretion to deny visitation if it is inconsistent with the well-being of the child or would be detrimental to the child. (§ 362.1, subd. (a) & (a)(1)(A).) "No visitation order shall jeopardize the safety of the child." (*Id.*, subd. (a)(1)(B); see also *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757 [balancing interest of parent in visitation with the best interests of the child].)

Here, the trial court expressly stated that it had "considered all of the evidence" and found it would be "detrimental to [S.O.] and against her best interest to have visits with [father]." On these facts, the trial court's determination was reasonable and there was no abuse of discretion.

Based on the foregoing, father's contention that his "fundamental right to parent must not be disturbed" fails. "'Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood.'" (*In re Angelia P.* (1981) 28 Cal.3d 908, 916, quoting *In re Carmaleta B.* (1978) 21 Cal.3d 482, 489.) This is such a case.

### Disposition

The judgment (order denying section 388 petition) is affirmed.

NOT TO BE PUBLISHED.


                                    YEGAN, J.

We concur:



        GILBERT, P. J.



        CODY, J.

Gayle Peron, Judge

Superior Court County of San Luis Obispo

_____

Miller Barondess and Dominic J. Nunneri, under appointment by the Court of Appeal, for Defendant and Appellant.

Rita L. Neal, County Counsel, Nicole Radakovich, Deputy County Counsel, for Plaintiff and Respondent.